IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**UNITED STATES OF AMERICA**                                      **PLAINTIFFS**
**ex rel. PAUL MONTGOMERY, et al.**

**v.**                           **NO. 4:05-CV-00899 GTE**

**ST. EDWARD MERCY MEDICAL**
**CENTER and DAVID MARK McCOY,**
**M.D. (a.k.a D. MARK McCOY, M.D.)**                     **DEFENDANTS**

## ORDER DENYING ATTORNEY'S FEES

Before the Court is Dr. McCoy's Motion for Attorney's Fees and Expenses. Dr. McCoy successfully obtained the dismissal of Plaintiff's claims of Medicare fraud pursuant to the False Claims Act ("FCA" or "Act"). Plaintiffs have opposed the motion in a response and a reply. Dr. McCoy has also submitted a reply in further support of his motion. The Court, after careful consideration of the respective arguments of the parties and the entire record in this matter, declines to award attorney's fees or expenses to Dr. McCoy.[1]

### BACKGROUND

This case was dismissed based upon the Court's finding that it lacked subject matter jurisdiction over Plaintiffs' claims under the False Claims Act. *See* Memorandum Opinion and Order of Dismissal, dated September 28, 2007 (docket # 76)(hereinafter "Memorandum

---

[1] The Court has considered Dr. McCoy's request for a hearing on the motion, but concludes that a hearing is not necessary. The pleadings adequately present the issue and provide all of the information required for the Court to properly exercise its discretion under 31 U.S.C. § 3730(d)(4).

- 1 -

Opinion"). The Court's conclusion was based on its application of 31 U.S.C. § 3730(e)(4) and its findings that the allegations in the Amended Complaint were based upon public disclosures and that the Plaintiffs lacked the direct and independent knowledge necessary to qualify as original sources. The Court's findings deprived the Court of subject matter jurisdiction over Plaintiffs' claims. See *Rockwell International Corp. v. United States et al.*, 127 S.Ct. 1397, 1405-06 (2007)(clarifying that the FCA's public disclosure-original source bar goes to the issue of subject matter jurisdiction).

On October 12, 2007, Defendant Dr. McCoy filed a Motion for Attorney Fees and Expenses. Dr. McCoy claims that he is a prevailing defendant entitled to a fee and expense award pursuant to § 3730(d)(4). Plaintiffs oppose the request.

**DISCUSSION**

    **A.**    **Authority to Award Fees**

The Court has discretion to award attorney's fees and expenses to a prevailing defendant in a qui tam action in certain statutorily enumerated circumstances. The Court's authority and the relevant circumstances are set forth in the statute, *to-wit*:

> If the government does not proceed with the action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorney's fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexations, or brought primarily for purposes of harassment.

31 U.S.C. § 3730(d)(4).

While the FCA does not define the terms "clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment," the Acts' legislative history suggests that Congress intended that the standard for awarding fees to a prevailing defendant under § 3730(d)(4) would

be analogous to that used to evaluate a fee request under 42 U.S.C. § 1988.[2]  As a result, courts applying § 3730(d)(4) have looked for guidance to attorney fee awards under § 1988.

A more stringent test applies for the recovery of attorney fees by a defendant.  The distinction is based on equitable considerations.  *Christianburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 418 (1978).  A prevailing plaintiff is "the chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority" and the district court is awarding counsel's fees "against a violator of federal law."  *Id*. (quotations omitted).  A successful defendant, on the other hand, must demonstrate that the plaintiff has misused his statutory privilege and distorted the intent of the legislation.  *Id.* at 419-20.

While the Eighth Circuit does not appear to have considered the issue of awarding attorney's fees to a prevailing defendant under the False Claims Act's § 3730(d)(4), it has done so under § 1988.  The Eighth Circuit has held that a prevailing defendant may recover attorney's fees under § 1988 only if the plaintiff's claim was "frivolous, unreasonable, or groundless, or . . .the plaintiff continued to litigate after it clearly became so."  *Flowers v. Jefferson Hosp. Ass'n*, 49 F.3d 391, 392 (8th Cir. 1995)(citing *Christianburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 422 (1978))(omitting internal citations).

The Court must apply a similar analysis here.  Prior to engaging in that analysis, however, the Court must address, *sua sponte*, whether it has the authority to award attorney's fees when the underlying action has been dismissed for lack of subject matter jurisdiction.  While the parties have not addressed this issue, it is incumbent upon the Court to do so.

---

[2] *See* S. Rep. No. 99-345, at 29 ("[The False Claim Act] standard reflects that which is found in [42 U.S.C.] § 1988 . . ."), reprinted in 1986 U.S.C.C.A.N. 5266, 5294.

## A. Jurisdiction to Award Attorneys Fees

The Eighth Circuit, applying § 1988 in a lawsuit brought pursuant to 42 U.S.C. § 1983, concluded that the district court lacked the authority to award attorney's fees under § 1988 after it had dismissed the plaintiff's § 1983 claim for lack of subject matter jurisdiction. *Keene Corp. v. Cass*, 908 F.2d 293, 298 (8th Cir. 1990). The *Keene* Court specifically held that a lack of subject matter jurisdiction also deprived the court of the power to make an award of attorneys fees. It further held that the defendant could not be considered a "prevailing party" when the dismissal was based on a lack of subject matter jurisdiction. *Id*. In this regard, the court specifically held that "[w]here a complaint has been dismissed for lack of subject matter jurisdiction, the defendant has not 'prevailed' over the plaintiff on any issue central to the merits of the litigation." *Id*. (omitting citation and some internal quotations).

The Circuits appear to be split on this issue. The Second, Ninth and Eighth Circuits prohibit a fee award following a dismissal based on subject matter jurisdiction, while the Seventh and Tenth Circuits do not.[3] The Court recognizes that the Eighth Circuit has not considered the issue in the specific context of a fee award to a prevailing defendant in a *qui tam* action pursuant to 31 U.S.C. § 3130(d)(4). Additionally, while this Court might be inclined to agree with the Tenth Circuit's conclusion that "[t]here is no Article III roadblock" preventing a

---

[3] *See, e.g. Branson v. Nott*, 62 F.3d 287, 293 (9th Cir. 1995)("By itself, § 1988 does not provide the district court with jurisdiction to grant an attorney fee award where subject matter jurisdiction to hear the underlying § 1983 claim is lacking."); *W.G. v. Senatore*, 18 F.3d 60 (2d Cir. 1994)(holding that court lacked authority to consider merits of fee application under IDEA fee shifting provision where it lacked subject matter jurisdiction over the substantive claim); *Citizens for a Better Environment v. Steel Co.*, 230 F.3d 923, 925-28 (7th Cir. 2000)(finding that, even if a court lacks power to rule on the substantive claims of the plaintiff, it does not necessarily lack power to award attorney fees, but discussing cases reaching opposite conclusion); *U.S. ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1055-56 (10th Cir. 2004)(adopting Seventh Circuit approach in *Citizens for a Better Environment, supra,* as "the most thoughtful approach").

- 4 -

fee award in the context of § 3130(d)(4)," it is obligated to follow the precedent of the Eighth Circuit.  *U.S. ex rel. Grynburg v. Praxair, Inc.*, 389 F.3d 1038, 1057 (10th Cir. 2004).  Unless *Keene, supra*, can be distinguished, it arguably bars the fee award requested by Dr. McCoy.[4]

Because the Court would exercise its discretion in this case to deny a fee award (assuming it had jurisdiction to make such an award), the Court need not resolve this issue.  The Court leaves it to the Eighth Circuit to determine whether a court retains the authority to make a fee award pursuant to 31 U.S.C. § 3730(d)(4) after it dismisses a False Claim Act case for lack of subject matter jurisdiction pursuant to the public disclosure bar.

**B.     Denial of Attorneys Fees**

For purposes of this analysis the Court assumes that it retains jurisdiction to award fees and expense and that Dr. McCoy may be considered "a prevailing party."

In *Flowers*, *supra*, the Eighth Circuit affirmed the district court's award of fees based on its finding that  the plaintiff Flowers "should have known from pre-trial discovery that his section 1981 claim was unreasonable, without foundation, and based purely on speculation." *Id*.  The Court noted with approval that the district court[5] "specifically considered the Supreme Court's admonition in *Christianburg* to refrain from *post hoc* reasoning and to view the reasonableness of the matter from the plaintiff's perspective at the time." *Id*.

Also in the context of § 1988, the Eighth Circuit explored extensively the distinction

---

[4] On the prevailing party issue, *Keene* might be distinguished by the fact that a dismissal under the FCA's public disclosure provision is "functionally *with prejudice*, as the relator cannot bring the same claim on the same facts again in any court." *U.S. ex rel. V. Pennsylvania Shipbuilding Co.*, slip copy 2007 WL 4233471, * 7 (E.D. Pa. Dec. 3, 2007)(emphasis in original).  Under such analysis, a dismissal under § 3730(e)(4) alters the legal relationship of the parties and should suffice to confer "prevailing party" status on a defendant in Dr. McCoy's situation.

[5] The undersigned presided over the district court trial of the *Flowers* case.

between prevailing plaintiffs and prevailing defendants in *Marquart v. Lodge 837, Int'l Ass'n of Machinists & Aerospace Workers*, 26 F.3d 842, 849 (8th Cir. 1994). The *Marquart* court concluded, following a review of civil rights decisions awarding attorney's fees to prevailing defendants, that "this Circuit has been unwilling to award attorney's fees where the defendant is unable to *prove* that the plaintiff's case is meritless." *Id*. at 851 (emphasis in original). The Court can not say that Dr. McCoy has proven that Plaintiffs' Medicare related claims had no factual merit or were without any legal basis.

Despite the Court's finding that jurisdiction was lacking in this case, the Court did not reach the decision lightly or without considerable effort to understand and apply the False Claims Act. The Act is complex, both procedurally and substantively. This Court did its best to reconcile multiple confusing interpretations given by other courts to the Act's peculiar (some might say archaic) language.[6]

This Court's task was made somewhat easier by the Supreme Court's decision in *Rockwell International Corp. v. United States*, 127 S.Ct. 1397 (2007). *Rockwell* was the first substantive decision by the Supreme Court on the frequently litigated public disclosure affirmative defense. Plaintiffs did not have the benefit of the *Rockwell* decision when they brought this action. Defendants ultimately prevailed on the jurisdictional defense, compelling the Court's conclusion that it lacked subject matter jurisdiction over Plaintiffs' claims pursuant to 31 U.S.C. § 3730(e)(4). The Court can not say that the claims contained in the Plaintiffs' Amended Complaint were legally frivolous based upon the body of law applying the public disclosure/original source requirements in effect when the Amended Complaint was filed.

---

[6] The Court sympathizes with anyone litigating under the False Claims Act. Perhaps Congress will elect at some point to give legislative attention to the FCA to resolve some of the still unresolved questions about the Act's application.

The Court understands that Dr. McCoy would prefer to look solely at the original Complaint rather than the Amended Complaint when assessing whether the claims in question were objectively unreasonable. However, the Court declines to so limit the inquiry. Plaintiffs were entitled under the law to amend their Complaint. Dr. McCoy asserts that the fact that the Plaintiffs "were afforded access to information related to Medicare patients by government investigators, after they had already filed this action, does not make their unsupported accusations of fraud against Dr. McCoy any less frivolous." (Brief at p. 7). The restrictions imposed by the FCA based upon the source of the information Plaintiffs used to amend the complaint is a separate matter from Plaintiffs' procedural right to amend their complaint. In assessing whether this action is frivolous, the Court will analyze the claims contained in the Amended Complaint.

For purposes of assessing whether to award legal fees based upon a finding that the claims were clearly frivolous, the Court will focus on whether there was objective factual support for the Plaintiffs' claims. The Second Circuit affirmed a district court's finding that an FCA plaintiff's claims were "objectively vexatious"[7] where there was no objective factual support for the plaintiff's allegation that the defendant physicians improperly received Medicare reimbursement for referrals to MRI[8] facilities in which they held a financial interest. *Mikes v. Straus*, 274 F.3d 687, 704-05 (2d Cir. 2001). The district court, in awarding fees, specifically

---

[7] While the *Mikes* Court described such claims as "clearly vexatious," it justified the fee award by finding that there was no objective factual support for the claim and therefore no reasonable chance of success. This is normally the definition of "clearly frivolous." The three alternative standards used to justify a fee award are distinct and have different requirements. *See, e.g.*, *U.S. ex rel. J. Cooper & Associates, Inc. v. Bernard*, 422 F.Supp.2d 225 (D.D.C. 2006) (discussing and distinguishing "clearly frivolous," "clearly vexatious," and "for purposes of harassment").

[8] Magnetic Resonance Imaging.

found "no evidence that any Medicare patient inappropriately received an MRI." *Id.*, at 705. The court held that the plaintiff's subjective intent was irrelevant. Instead, the court focused on whether the claim, viewed objectively, could "be said to have no reasonable chance of success, and [to] present no valid argument to modify present law." *Id.* at 705.

The Amended Complaint recites 60 examples of unnecessary procedures allegedly performed by Dr. McCoy on Medicare beneficiaries. Dr. Harrison apparently used his medical expertise to opine on why such procedures were medically unnecessary. Apparently, during the seal period, the Government independently enlisted the services of Dr. Alderman, an interventional cardiologist, to review the medical documentation on Dr. McCoy's surgical patients obtained from Medicare. Plaintiffs offer the declaration of Dr. James Alderman that of 52 Medicare cases he reviewed, 32 of the surgeries performed were not medically indicated and should not have been performed.  (Exh. 2 to Pl.'s response). The Court can not find that Dr. McCoy has demonstrated that Plaintiffs had no reasonable chance of success as to the Medicare patients identified in Plaintiffs' Amended Complaint.

In a footnote in its Memorandum Opinion dismissing the case, the Court faulted Plaintiffs for failing to provide information regarding specific claims, noting that such omission was problematic under the heightened pleading requirements of Rule 9(b) and to satisfy minimal pleading deficiencies. (Court's Opinion, fn 21 at p. 7). The Court did not dismiss the case based on inadequacies in pleading however. And, as the Court recalls, Plaintiffs had requested additional time to supplement their allegations before dismissing the case for pleading inadequacies. Plaintiffs contend that, if permitted leave to amend, they could have substantiated the 60 specific false claims identified in their Amended Complaint. Additionally, Doug Chavis, former Assistant U.S. Attorney described the records reviewed by Dr. Harrison as pertaining to "paid Medicare claims." (Chavis Affidavit, Exh. 2 to Pl.'s Response to Motion to Dismiss).

- 8 -

Under the circumstances and given the specificity regarding the Medicare patients, the Court would have been inclined to permit Plaintiffs the opportunity to amend their Complaint. Additionally, the Court recognizes that Plaintiffs' counsel could have legitimately believed that the detailed explanation provided about the unnecessary medical treatment provided to the sixty Medicare patients, combined with Doug Chavis' assertion that the records reviewed were of "paid Medicare claims" sufficed to provide the required "representative examples." See *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552 (8th Cir. 2006)(Rule 9(b) does not require a *qui tam* plaintiff to allege specific details of "*every* alleged fraudulent claim" forming the basis of the complaint, but to provide "*some* representative examples").

The Court can not find that there was no objective factual support for at least some of the sixty allegedly false Medicare claims.[9] The Court recognizes that Plaintiffs should not have included in their Amended Complaint the allegations regarding private pay patients Plaintiff Montgomery and D.U. Such claims could not possibly have given rise to a viable False Claims Act claim. The Court presumes that counsel did so primarily for the purpose of providing "other specific examples" of the manner in which Dr. McCoy allegedly carried out his alleged pattern and practice of performing unnecessary medical procedures. The Court declines to award attorney's fees based solely on the inclusion of these two claims, but encourages counsel to be more careful in the future.

---

[9] As to thirty-two of the sixty patients, there were two physicians, Relator Dr. Harrison and Dr. Alderrman who would opine that the procedures performed were medically unnecessary. The phrase "medically unnecessary" is a term of art under the FCA  There is a distinction between procedures which are medically unnecessary, which can be actionable under the FCA, and expressions of opinion or scientific judgments about which reasonable minds may differ, which cannot be "false" and therefore are not actionable under the FCA. *See U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004)(discussing distinction). This case never progressed to the point that the Plaintiffs' allegations were tested in an adversarial proceeding to determine whether the referenced procedures were in fact "medically unnecessary."

Dr. McCoy also contends that Plaintiffs' action was clearly vexatious and harassing because it was motivated by Dr. Harrison's personal animosity towards Dr. McCoy. No one disputes that there was bad blood between the parties. Dr. Harrison assisted Paul Montgomery in his successful medical malpractice action against Dr. McCoy. Dr. Harrison complained about Dr. McCoy to hospital officials and refused to send his patients to Dr. McCoy, for which Dr. Harrison contends he was rebuffed by hospital officials. Dr. McCoy also points out that Dr. Harrison played an instrumental role in encouraging state and federal investigations of Dr. McCoy.

The Court recognizes that Dr. Harrison, in particular, appears to have been personally motivated to pursue this matter. Both Plaintiffs have offered affidavits explaining that they were not motivated by a personal grudge or animosity, but rather the desire to stop Dr. McCoy in order to prevent unnecessary harm to others. Since Dr. McCoy has not demonstrated that the Medicare claims were baseless, the Court can not find, as Dr. McCoy argues, that Dr. Harrison was using the FCA "as a vehicle to vindicate his personal grievances." (Dr. McCoy's motion at p. 9). Under the circumstances, the Court can not find that Dr. Harrison acted in subjective bad faith.

A finding of bad faith is not necessary in order to find for Dr. McCoy on his argument that the claims asserted were clearly vexatious. "While harassment suggests bad faith on the part of the losing party, the term 'vexatious' in no way implies that the plaintiffs subjective bad faith is a necessary prerequisite to a fee award against him." *Christianburg*, 434 U.S. at 421. "Evidence of vexatiousness or an intent to harass on the part of a plaintiff includes, but is not limited to . . . the raising of new allegations in an effort to circumvent the arguments in a defendant's motion to dismiss . . . and the inclusion of counts for which the available evidence 'defeats any inference of a false claim.'" *United States ex rel. J. Cooper & Associates*, 422

F.Supp.2d 225, 238 (D.D.C. 2006).

The Court is influenced by the fact that the Plaintiffs readily admitted in response to the motion to dismiss that their sole basis of knowledge for the Medicare patients identified in the Amended Complaint came from discovery responses obtained by the Government from federal authorities. And, as the Court has already noted, this is not a case where the Court can find that there was no factual basis for the underlying claims, as argued by Dr. McCoy.

It must be stressed that this case was never considered on the merits. Thus, it is a misnomer to speak in terms of "evidence" presented to support the allegations. The case was dismissed at an early stage on jurisdictional grounds. The Court was never in a position to consider any so-called "evidence." The allegations, however, were serious. Physicians police themselves to a great degree. Only a physician would likely be in a position to stop another physician who was engaged in a pattern and practice of performing unnecessary surgical procedures for which he received Medicare reimbursement. While the Court is not in a position to express any opinion on the truth or falsity of the Plaintiffs' claims, it must observe that the Plaintiffs have at least put forth some factual support for their theory of liability. In this situation, the Court is concerned that an award of attorney's fees might have a chilling effect on the willingness of other physicians to come forward. The flip side of this argument is that potential *qui tam* plaintiffs should be deterred from bringing potentially slanderous actions for which jurisdiction is lacking. So, we are dealing here with two equally important public policy concerns. The Court finds that the scale is tipped in this case by the fact that the public disclosure/original source law, which deprived this Court of subject matter jurisdiction, was not clearly established at the time the Amended Complaint was filed. That finding, in combination with the Plaintiffs' presentation of at least some factual support for their allegations, convinces the Court to decline to exercise its discretion to award attorneys fees and expenses (assuming

that it had jurisdiction to do so).

## CONCLUSION

For the reasons herein stated,

IT IS HEREBY ORDERED THAT Separate Defendant Dr. McCoy's Motion for Attorney's Fees and Expenses (docket no. 77) be, and it is hereby, DENIED.

IT IS SO ORDERED this  8th  day of January, 2008.

                                              _/s/Garnett Thomas Eisele_____
                                              UNITED STATES DISTRICT JUDGE